Friday, March 25. The Judges delivered their opinions.
Judge Tucker.
This was a suit for freedom, brought in the District Court of Petersburg. The pauper gave in evidence her descent in the maternal line, from Nanny, who recovered her freedom in that Court in 1799 against Stephen Mayes, fay judgment on a writ of inquiry, there being-no defence; and also gave evidence to prove, that on the execution of that writ of inquiry, (the record in which case was also offered in evidence, and admitted by the Court,) it was deposed by a witness, (whose name the present witness, Mr. Taylor, did not particularly recollect, but whom he believes to have been one Francis Coleman, a very old *200 man, who, he believes, but does not positively know, la since dead,) that Nanny was descended, according to general reputation, in the maternal line, from an Indian ancestor, imported into this State since the year 1705. And further, that he (being the counsel assigned the pauper) had endeavoured to no purpose, to find a living witness, who might prove the same point in the present cause. And thereupon the defendant’s counsel objected to the introduction of that record and evidence, because the defendant was not proved to hold or claim under, or in any other manner to be privy to the said Stephen Mayes, in that record mentioned; and because no issue was made up in that suit, whereby the title to the freedom of Nancy was brought into question. The Court overruled the objection, and admitted both the record and parol evidence to go to the Jury, liable to be rebutted by other opposing evidence and circumstances. Upon which there was a bill of exceptions.
The general rule as to giving verdicts and judgments in evidence is, that they are not to be admitted but between parties, or privies, (a) But there are exceptions to this as well as to all other general rules. Among others, it is said, that where the fact is to be proved is such, whereof hearsay and reputation are evidence, a special verdict between other parties, stating a pedigree would be evidence to prove a descent; for, in such case, what any of the family who are dead have been heard to say, or the general reputation of the family, entries in family books, &c. are a allowed.(b) I find it also mentioned as a rule, that nobody can take benefit by a verdict that would not have been prejudiced by it, had it gone contrary.(c) Whether the converse ! of this rule, viz. that whosoever might be prejudiced by a ) verdict, if one way, shall be entitled to the benefit of it, if to the contrary, also holds, I have not been able to meet with any authority that has decided. I may, perhaps, notice this point, after considering the two exceptions to ¡ho general rule above mentioned.
*201 1. The first is, that where the fact to be proved is such whereof hearsay and reputation are evidence, a special verdict between other parties stating a pedigree, would be evidence to prove a descent.
Among other cases in which hearsay is evidence, Mr. Espinasse(a) mentions cases concerning legitimacy, cases of pedigree, and cases of settlement of paupers. As to the first, in a country where marriages are celebrated either by licence or publication of bans ; and where registers are required to be kept, it shews a liberal practice in the Courts to admit of hearsay evidence upon that point. Yet, inasmuch as there must be many marriages celebrated in other countries, the reason of the law prevails to admit hearsay evidence, instead of requiring the bishop’s certificate, or the parish register to be produced. The same may be said as to pedigrees. And both the cases are stronger in this country, (where we have no registers of any kind at present, nor ever had as to persons of colour,) than in England. The case of paupers is also very strong. If then, the doctrine be sound, that a verdict inter alios may be admitted, wherever hearsay evidence is admissible,, we may infer that it is admissible in all these. In this country it has always been admitted in pauper suits for freedom. The whole testimony in the case of. Hudgins v. Wrights was of this nature,(b) and the whole Court concurred in its admissibility and weight. In that case, the circumstance that John, a brother of Hannah, had brought suit for his freedom, was noticed by one of the Court in giving his opinion. Would it not have been competent for that circumstance, coupled with the other evidence in the cause, to have been offered in evidence to a Jury ? And if so, is there any reason why a fact of that nature should not be proved by the highest evidence, namely, the record of his recovery. And, if such collateral and presumptive proof were admissible, where the party recovering was merely a collateral kinsman, would not similar proof, of a similar recovery by a lineal female ancestor, be also admissible l
*202 How far a verdict inter alios is admissible, either as conclusive or only as presumptive evidence in suits respecting freedom, I think may be shewn by the following case : A female held in slavery recovers her freedom by judgment in the Court of one County or District: she removes to another County or District, without a certificate of her freedom; is taken up as a runaway; advertised and sold as such under the act concerning runaways. She brings another suit for her freedom against her new master. Can it be required of her to do more than produce the former record of her recovery, with an averment that she is the same person ? I conceive not, and that such record is conclusive evidence against all the -world; unless the judgment can be impeached by a person whose title was antecedent to that recovery, on the ground of fraud and collusion between herself and the defendant against whom she had recovered; or whose title was‘paramount to that of the defendant, and who would not have fyeen barred by the act of limitations, if he had brought an action of detinue for her as his slave. Now let us suppose, at the time she was apprehended as a runaway, and sold, she had a child with her, who should also be sold as a slave. Would it not be competent to this child to produce the record of her mother’s recovery, and aver that she was bom after, the commencement of that suit, or the day of the writ purchased. And, if she proved this, would not the record be conclusive evidence in her favour against all the -world, except as before mentioned. And, if it would be conclusive evidence in that case, as I hold it would, could she not avail herself of that record as circmnstantial evidence, to prove her right to freedom under a prior right thereto, in, her mother, if the child should happen to be born before instead of after the writ purchased in that suit ? I am decidedly of that opinion also. For if she could be let in to prove the fact that her mother was a free woman by hearsay testimony, ought she not to be let in to prove it by a judgment P Since every judgment in favour of any person *203 furnishes a conclusion in lazo, that the person obtaining it is free, and not a slave ?
On these grounds, I am of opinion, that the record in the suit between Nanny and others and Stephen Mayes, was admissible evidence upon the trial of the suit between the present parties, although the defendant doth not claim a title to the plaintiff as his slave, under Mayes. But, although I am of this opinion, I cannot concur with the District Court to the extent of the opinion delivered by them, “ that it should go to the Jury as evidence, that Nanny “ was free as being descended in the maternal line from an “ Indian ancestor, imported into this state, since the year “ 1705 j” for the record contains no such fact as that: but. it is conclusive evidence to prove that Nanny was either a free woman, or entitled to be so, the day of the emanation of the writ in that suit; and this fact it was competent to the plaintiff Isabell to prove by the record, if it can avail her cause. I am therefore of opinion, that the judgment must for this reason be reversed, and a new trial had in the suit, in which the record between Nanny and others and Stephen Mayes, may be admitted as evidence that Nanny, one of the plaintiffs in that suit, was a free woman, or entitled to her freedom on the day of the emanation of the writ in that suit; leaving it open to both parties to shew upon what ground that judgment was rendered; and also whether the present plaintiff was born before or after the emanation of the writ in that suit.
I am also of opinion, that the evidence of Mr. George Keith Taylor was properly admitted; as he states his be-x.xee, although he did not positively know, that the witness alluded to by him was dead; and that it ought to be admitted on the new trial in this case, unless it shall appear to the Court that the witness is still living, and may be had.
Judge Roane.
In giving my opinion upon this case, I frill premise two positioxxs;
*204 1st. That if any part of the evidence in this case, that is material, has been received when it ought to have been rejected ; or received to have a greater effect than it ought to have, the judgment of the Court below must be reversed, (a)
And 2dly, That although liberty is to be favoured, “ the “ Court cannot, on that or any other favoured subject, “ infringe the settled rules of Iaw.”(b) In that case it was held, in conformity to this principle, that a verdict between parties and privies, finding the mother of the plaintiff to be a slave, was conclusive evidence against him, as much as a verdict finding her to be free would have operated in his favour. This decision, therefore, shuts out the pretence that we can, in this case, take a greater latitude in relation to the rules of evidence, than in any other.
Bearing in mind these positions^ let us examine the case before us,
The eyidence excepted to in this case, was twofold: 1st, That of Geo. K. Taylor, given at the trial; and 2dly. That of the record in the case of Nanny v. Mayes.
As to the question concerning the testimony of Mr. Taylor, in the view I have taken of the subject, it is not absolutely necessary to be decided, As at present advised, however, I haye no hesitation to say, that as hearsay evidence, and that of general reputation is admissible in relation to pedigrees, especially where the point to be proved is of ancient standing, and as the witness in question declares, “ that he had endeavoured to no purpose tp find a “ living zvitness to prove the same point in the present “ case,” &c. his account of what was proved by an old witness in the trial of Nanny v. Mayes, and who under the1 above circunistances is to be accounted dead,(a) was rightly received, (so far as it goes to prove that Nanny was descended from a reputed Indian ancestor,) although he does not particularly recollect the name of the witness, nor know positively that such witness is since dead. Under these circumstances, this testimony is probably the best that thp *205 nature of the case will admit, and is better than mere hearsay testimony, inasmuch as it was given in upon oath, although it was not between the same parties, nor upon a point decided, or necessary to be decided by the Jury. This point was not necessary to be decided by the Jury in that case, because the plaintiff’s right to freedom was admitted by the default of the defendant. This case, however, is at least as strong as that put in the case of Goodright v. Moss of an answer in Chancery, given by the mother in a suit between other parties, but which was received merely as evidence under her hand,, of her having made a declaration touching the legitimacy of her child. Whether the general reputation spoken of in this deposition is competent not only to fix the fact of the identity of the ancestor, but also that this ancestor was an “ Indian brought into “ this country since the year 1705,” I am not entirely prepared to say. I believe that this point has never yet been decided by this Court. In the case of Coleman v. Dick and Pat, this point was found by the Jury; whereas the verdict in question finds nothing but the damages submitted to them, upon the writ of inquiry; and in the cases of Jenkins v. Tom, &c. and Hudgins v. Wrights, testimony was given respecting the appearance of the persons in question, which afforded data whereby the Jury and Court were respectively enabled to decide whether they were Indians or not. In this case, those data are not afforded, and the question is, whether by reason of the antiquity of the transaction, we can dispense with those data, and let in proof of these facts by general reputation. I am disposed to think we may, from the necessity of the case, and the impossibility of obtaining better testimony. It is, besides, not easy to conceive that this general reputation would ever have arisen unless these data had existed at the time of the origin of the transaction, to the general satisfaction of the neighbourhood; unless it had been clearly known to them, that the ancestor in question was brought into this country *206 about the time mentioned in the testimony, and mol cover had the entire appearance of an Indian.
As to the next point, it does not concern any evidence offered at the trial in the case of Nanny v. Mayes, nor any verdict rendered in the cause upon the very point now in question; but it submits this question to the Court, whether the record in that suit should go in evidence to the Jury, to prove that Nanny was free “ by reason of being “ descended in the maternal line from an Indiaii ancestor “ imported into this state since the year 1705and the Court upon this point decided in the affirmative. If the question submitted by the appellee and decided upon by the Court had been merely that Nanny had recovered her freedom, the opinion had been correct, and then the appellee’s case might have been made complete, by proof that she was born since such recovery was had. In that case, that record would not be given in evidence to proye the appellee's right to freedom, but her mother's right to freedom, and her case would have been made complete, on the principle partus sequitur ventrem, by shewing that she was born after such recovery was had: or she might have rested her claim to freedom dehors that record, and relied on the evidence stated by Mr. Taylor, to recover it, on the same ground that her mother had claimed hers. But the question propounded and decided is, that the record proves that Nanny recovered her freedom, “ as being descended “ from an Indian ancestor," &c. For any thing appearing in the record, the acknowledgment of the defendant, by means of which she recovered, might have been through mere inattention, or predicated on the ground of her having been legally emancipated, and not on that of a descent from an ’Indian ancestor. She-recovered her freedom by the default of the defendant and by the judgment of the Court, and not by the verdict of the Jury: the Jury were only charged to inquire of damages. The title set out in the declaration is a mere general one of freedom, and the suffering the judgment by'default, admits it as stated: it does *207 not admit any specific ground upon which the right of freedom was established: it does not admit that specific ground which is taken by the Court below in the present case, and was taken by the deposition of the aged witness. That testimony was given in, posterior to the confirmation of the judgment. The judgment therefore does not sanction or affirm the fact now in question; nor does the verdict of the Jury; (for it was confined to the mere question of damages ;)(a) and in truth it only finds “ that die plaintiffs have sustained damages, by the occasion in the dcclaration mentioned, to one penny.” Neither the judgment nor the verdict, therefore, have affirmed the particular ground now in question, and necessary to be established on the part of the appellee, and which the District Court supposes it has decided. The evidence stated by Mr. Taylor to have been given, on executing the writ of inquiry, may indeed be used as evidence ; but the record in question proves only this general position, that Nanny recovered her freedom. This would have been sufficient for the appellee, (as I have already said,) if that had also shezvn that she was born since the time of that recovery; but the judgment in question standing singly, proves nothing as to Nanny's right to freedom, anterior to the date of the writ, and affirms no specific ground of recovery; and therefore, although we are not now at liberty to controvert her right to freedom, the judgment in question proves nothing, so as to benefit the appellee; but admitted, in the extent in which it was received, it had a direct tendency to. injure the appellant.
However competent, therefore, a verdict between other parties, and finding % particular fact, whereof reputation is admissible, evidence, might be to establish such fact, it is clear that the verdict and judgment before us, tvas inadmissible under this criterion.
I cannot well see why the testimony of the old.witness was at all exhibited, unless the writ of inquiry had been set aside, and the question of freedom put in issue; for *208 that right was admitted, and the Jury, going for damages* ouS^t t0 have regarded, as they did regard, the established law on that subject, and found only one penny damages. That evidence, however, considered merely as evidence, was proper to be used in this trial, however irrelevant in the former; but as to the record'in question, it stands upon quite a different foundation; it does not prove the particular point for which it was produced, and which the District Court decided it did prove.
On these grounds, therefore, (without going through every point and question made in the argument of the case,) I am of opinion that the judgment of the District Court, so far as it respects the admission of the record in question, in the latitude taken by the Court, was erroneous, and ought to be reversed.
Judge Fleming.
Although it is admitted, that laws should be liberally construed in favour of the rights of freedom, yet the rights of property ought to be respected and preserved; and it is perhaps attended with difficulty to draw the true line of distinction between them.
There are two objections to the opinion of the Court stated in the bill of exceptions in this case:.
1st. In admitting the record and verdict, in the case of Nanny and others v. Mayes, to go in evidence to the Jury, to prove that the said Nanny was free by reason of her being descended in the maternal line from an Indian ancestor, imported into this state since the year 1705; because the defendant is not proven to hold, or claim under, or in any other manner to be privy to, Mayes, the defendant in the said record mentioned; and because there never was any issue made up in the said suit between Nanny and others and the said Mayes, whereby the title of the plaintiffs to freedom was brought in question, the suit being tried on a writ of inquiry.
2dly. In admitting the testimony of Geo. K. Taylor, who proved, that on the trial of the writ of inquiry aforesaid, *209 It was deposed by a witness, he thinks one Coleman, & very old man, (who he believes is since dead,) that the said Nanny was descended, according to general reputation, in the maternal line, from an Indian ancestor, who was imported into this State since the year 1705, The said Taylor further stated, that he had endeavoured, to no purpose, to find a living witness, who might prove the same point in the present case.
With respect to the first objection, it is a general rule, that no verdict shall be given in evidence, but between Such as were parties in the cause in which the verdict was given, or privies to them, (a) In the case of Sherwin v. Clarges, cited in Buller’s Nisi Prius, 232. it is laid down that a verdict on the same pointy and between the same parties, may be given in evidence, though the lands are not the same, but then the verdict ought to be between the same parties, because otherwise, a man would be bound by a decision, who had hot the liberty to cross-examine : and nothing can be more contrary to natural justice than that any .one should he injured by a determination that he was not at liberty to controvert. And where it is said that a verdict maybe given in evidence between the same parties, it is to be understood with this restriction, that it is of a matter which was in issue in the former cause; for otherwise, it will not be allowed in evidence, because, if such Verdict be false, there is no redress.
Apply these rules and principles to the case before us t Pegram, the appellant, was neither party nor privy to the suit between Nanny and others v. Mayes, nor is it pretended that she claims title to hold Isabell as a slave under Mayes, and the objection in this case has additional force, from the consideration, that in the former case there never was an issue by which the right of Nanny and others to freedom was brought in question before the Jury.
2. As to the second point, the admission of the testimony of Geo. K. Taylor, it seems correct, and not exceptionable ; because the declarations, especially when made upon oath, of persons uninterested, and who are then dead, *210 or not to be found, are admissible and proper, in questions concerning legitimacy, or in questions of pedigree.
But the admission of the record in the case of Nanny and others v. Mayes, to go in evidence to the Jury, seems to me an error not to be gotten over ,• unless it had been qualified with an instruction that it should be considered only as evidence that Nanny had obtained her freedom.
In the case of Shelton v. Barbour,(a) which was mentioned in the argument, the record in a suit for freedom, between the mother of the appellee and Robert Harris, was decided by this Court to be not only proper but conclusive evidence; because there was an act of Assembly in-force, declaring that children shall be bond or free, according to the condition of the mother; the verdict which found the mother a slave, was therefore conclusive evidence to prove the son was so, unless rebutted by evidence to proven that the son had been emancipated after his birth.
I am of opinion, upon the whole, that the judgment is erroneous, and ought to be reversed,- that the cause be remanded to the District Court for a new trial, with an instruction that the record in the case of Nanny and others v. Mayes, is not to go in evidence to the Jury, unless it be qualified with an instruction that it be considered only as evidence that Nanny had obtained her freedom.
The opinion of the Court was entered as follows:
44 This day came the parties by their counsel, arid the “ Court having maturely considered the transcript of the 44 record of the judgment aforesaid, and the arguments of 44 counsel, is of opiniori, that the said District Court erred 44 in- permitting the record in the suit between Nanny and 44 others and Stephen Mayes to go tó the Jury, as evidence 44 to prove that the said Nanny was free as being descended 44 in the maternal line from an Indian ancestor, imported 44 into this Slate since the yeür 1705; no such fact as that 44 appearing from the said record, in which there is neither 44 plea nor issue, but a judgment by default, and writ of *211 “ inquiry of damages only; and that there is no other error “ in the said judgment. Therefore it is considered, that “ the said judgment be reversed and annulled. And it is “ ordered, that the jurors’ verdict be set aside, and that a “ new trial be had of the issue joined between the parlies u in this suit; on which trial the record in the suit between. “ Nanny and others and Stephen Mayes shall be admitted “ to go to the Juiy as evidence that the said Nanny, one of <c the plaintiffs in the said record mentioned, 'was a free “ woman, or entitled to her freedom on the day of the s‘ emanation of the writ in that, suit; leaving it open to “ both parties to shew, if they can, upon what ground the judgment in that suit was rendered; and also leaving it “ to them to shew, if they can, whether the plaintiff Isabett ‘‘ was born before or after the emanation of the writ A that suit.”

 Butler's N. P. p. 231.

 Ibid. 233.

 Hard. 472. citied in Gwil. Bac. Abr. title Evidence,( F.)

 2 Nisi Prius, 785, 786.

 1 Hen. & Munf. 134.

 See to this point, the case of Goodright, &c. v. Moss, &c. Cowp. p. 593. and the decision of this Court during the present tern), in the case of Preston v. Harvey.

 2 Wash. 67. Shelton v. barbour.

c) 2 Bac. Abr. Gwil. edit. 625.

 1 Stra. 612.

 2 Espinasse, 736.

 2 Wash. $4.